IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fred V. Berry, et al.,                                            Case No. 3:08CV3005

               Plaintiffs

      v.                                                     ORDER

Lucas County Board of Commissioners, et al.,

               Defendants

         This is a civil rights action challenging application of Lucas County's "pay-for-stay"[1] program to plaintiff Fred V. Berry. Plaintiff brings three challenges to the program, which defendants Lucas County Board of Commissioners and James A. Telb, Lucas County Sheriff, implemented: 1) claims under 42 U.S.C. § 1983 that the program violates the Fifth and Fourteenth Amendments and constitutes a bill of attainder and 2) a claim that the program contravenes Ohio law.

         Plaintiff seeks declaratory, injunctive and monetary relief and class certification.

         Jurisdiction is proper under 28 U.S.C. §§ 1331, 1367, 2201.

         Pending are plaintiff's motion for partial summary judgment on liability [Doc. 14] and defendants' motion for summary judgment on all claims [Doc. 21].

---

[1] The parties and documents alternatively refer to the program as "pay-to-stay" and "pay-for-stay." I use "pay-for-stay" for consistency.

For the reasons that follow, I grant defendants' motion in part and deny it in part, and I deny plaintiff's motion.[2]

## Background

### I. Ohio Law and the *Koltiska* Consent Decree

In 2000, the Lucas County Commissioners adopted a pay-for-stay program at the Lucas County jail under O.R.C. § 341.06(A)(2) permitting them to have "a person confined to the jail [] reimburse the county for any expenses it incurs by reason of the person's confinement in the jail." Sheriff Telb implemented the Lucas County program in August, 2001.

In 2002, James Koltiska filed a class action lawsuit alleging that a "pay-for-stay" program in Cuyahoga County violated due process under the Fourteenth Amendment. Koltiska later amended the action to include several county sheriffs as defendants, including Sheriff Telb.

Also in 2002, the General Assembly revised the statute governing pay-for-stay programs. The revised statute provides that "the board of county commissioners may require a person *who was convicted of an offense* and who is confined in the county jail to reimburse the county for its expenses incurred by reason of the person's confinement." O.R.C. § 341.19 (emphasis added).

In 2005, after certifying the *Koltiska* case as a class action, District Judge Solomon Oliver approved a jointly submitted settlement proposal [*Koltiska* consent decree]. [Doc. 21, Exs. 4, 5]. The subclass certified specific to Lucas County consisted of:

> Those persons who, between November 20, 2000 and November 20, 2004 were booked into or incarcerated in the Lucas County Jail and from whom money in the form of either a "booking fee" or a "per diem fee" to recoup the cost of confinement was collected prior to the inmates having been convicted of a crime.

---

[2] I may rule on motions for summary judgment prior to determining whether to certify a class. *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 616 (6th Cir. 2002).

[Doc. 21, Ex. 3].

The *Koltiska* consent decree required settling defendants, including Sheriff Telb, to change the operation of pay-for-stay programs. It prohibited the defendants from "charging or collecting . . . any costs of confinement . . . from inmates who are or have been incarcerated in the county jails . . . unless that inmate has been incarcerated pursuant to a journal entry of conviction."[Doc. 21, Ex. 4].

The consent decree also permitted settling defendants to collect a $100 booking fee, provided that jail officials: 1) advise the person booked that of the "option, but not the obligation" to pay the fee; 2) deposit the fee, if paid, in a "trust account" to be applied to the inmate's pay-for-stay obligation on conviction; and 3) refund the fee from the trust account if the person is not convicted within 180 days of booking. *Id*. The consent decree also permits settling defendants to recover from prisoners the costs of property damage, medical and dental care and random drug tests.

Defendants, supported by an affidavit of Jim O'Neal, the Lucas County Sheriff's Department Corrections Administrator, assert that Lucas County's pay-for-stay program is operated in accordance with the terms of this consent decree.

## II. Plaintiff's Arrest and Current Litigation

On August 25, 2008, Ottawa Hills police officers arrested plaintiff for disorderly conduct while intoxicated, a misdemeanor, and took him to the Lucas County jail. There Sheriff's deputies booked plaintiff and took the approximately $500 in his possession. They deposited $100 as the $100 booking fee in an "Escrow Trust Account."

Plaintiff states in an affidavit that he was not told he had the option not to pay the fee.

3

The document provided to and signed by plaintiff, entitled "Pay For Stay™ – Escrow Trust Account Deposit," states that, "Upon conviction you will be responsible for $100.00 each day or partial day of your incarceration as a result of your charged conviction." [Doc. 14, at 23]. It also states that "in order to request a return of your deposit, it is your responsibility to provide legal verification that all charges have been dismissed or you have been found innocent on all charges" and it gives contact information for the pay-for-stay coordinator. *Id.*

Approximately four hours after booking, officials released plaintiff and returned his property, including the cash, except for the $100 booking fee.

On January 21, 2009, the Toledo Municipal Court dismissed the charges against plaintiff.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the opponent's evidence as true and construes all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*,

4

504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

Plaintiff argues that I should grant summary judgment to him and members of the proposed class on the issue of liability only, leaving for later determination questions of damages and class certification. Defendants counter that they are entitled to summary judgment *in toto* because their actions comply with the *Koltiska* consent decree and hence those actions do not violate plaintiff's rights.

### I. Effect of *Koltiska* Consent Decree

### A. Consent Decrees

A consent decree, "although in effect a final judgment, is a contract founded on the agreement of the parties." *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992). A consent decree "'[a]s a contract . . . reflects a compromise or agreement negotiated between parties who each have a purpose.'" *U.S. v. Wayne County*, 369 F.3d 508, 511 (6th Cir. 2004) (quoting *U.S. v. Michigan*, 940 F.2d 143, 150 (6th Cir. 1991)).

In determining whether to approve a consent decree, a district court considers factors such as "the likelihood of success on the merits, the risk associated with the expense and complexity of litigation, and the objections raised by class members." *Granada Invs., Inc. v. DWG Group*, 962 F.2d 1203, 1205 (6th Cir. 1992).

As one treatise explains:

> The central characteristic of a consent judgment is that the court has not actually resolved the substance of the issues presented. . . . [J]udicial approval of a consent judgment may require careful scrutiny of its fairness in light of the probable outcome on the merits. . . . However close the examination may be, the fact remains that

5

> it does not involve contest or decision on the merits. Any findings made as part of the approval process go to the reasonableness of the settlement, not the merits of the dispute.

Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE § 4443 (2009).

In a class action, the class must be clearly defined and settlements or judgments only bind members of the class. *E.g., In re Sch. Asbestos Litig.*, 789 F.2d 996, 1005 (3d Cir. 1986).

### B. Effect of *Koltiska* Decree

The court in *Koltiska* defined the certified subclass of Lucas County inmates as:

> Those persons who, between November 20, 2000 and November 20, 2004 were booked into or incarcerated in the Lucas County Jail and from whom money in the form of either a "booking fee" or a "per diem fee" to recoup the cost of confinement was collected prior to the inmates having been convicted of a crime.

[Doc. 21, Ex. 3].

Plaintiff is not a member of this class because his arrest August 25, 2008, was outside the class period. The consent decree therefore does not apply to plaintiff. *In re Sch. Asbestos Litig.*, *supra*, 789 F.2d at 1005.

While a judge considering whether to approve a consent decree must scrutinize the "fairness [of the decree] in light of the probable outcome on the merits," judicial approval of the decree is not, itself, a decision on the merits. Wright, Miller & Cooper, *supra*, § 4443. Defendants' overarching argument that their actions are constitutional because their pay-for-stay program complies with the consent decree is therefore off-point and not relevant to the summary judgment determination.[3]

---

[3] Although plaintiff is not a member of the class, defendants repeatedly point out that their pay-for-stay program is operated in accordance with the terms of the consent decree. To the extent I later refer to the consent decree, I do so only as it relates to defendants' factual assertion that Lucas County's pay-for-sty program abides by the terms of the decree, not because compliance itself is legally relevant.

6

## II. Plaintiff's Claims

### A. Bill of Attainder

Both parties seek summary judgment on plaintiff's bill of attainder claim.

Two provisions, one addressed to Congress, the other to the states, of the federal Constitution prohibit bills of attainder. Article I, Section Nine provides "No bill of attainder . . . shall be passed." Article I, Section Ten provides that "[n]o state shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the obligation of Contracts."

Plaintiff bears a heavy burden in asking me to declare an action an unconstitutional bill of attainder, as "'only the clearest proof . . . suffice[s]'" to establish that a statute acts as a bill of attainder. *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 83 (1961) (quoting *Flemming v. Nestor*, 363 U.S. 603, 617 (1960)).

The bill of attainder clause "prohibits legislatures from engaging in '[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial.'" *Cutshall v. Sundquist*, 193 F.3d 466, 477 (6th Cir. 1999) (quoting *U.S. v. Brown*, 381 U.S. 437, 448-49 (1965)). The clause "was not intended to serve as a variant of the equal protection clause, invalidating every Act of Congress or the states that legislatively burdens some persons or groups but not all other plausible individuals." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 471 (1977).

Thus, a claim that a statute constitutes a bill of attainder has three elements: 1) specification of the affected persons; 2) punishment; and 3) lack of a judicial trial. *Id.*

**1. Specification of Affected Persons**

**1. Specification of Affected Persons**

The specificity element requires "[t]he singling out of an individual for legislatively prescribed punishment . . . whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party*, *supra*, 367 U.S. at 86. A law that applies to a subset of people, but "does not single out specific persons or persons with specific characteristics" is not a bill of attainder. *Song v. City of Elyria*, 985 F.2d 840, 844 (6th Cir. 1993).

Plaintiff's bill of attainder challenge to the pay-for-stay program fails this test. The pay-for-stay program applies to "all persons who" are booked at the Lucas County jail and "does not single out specific persons or persons with specific characteristics." *Id.* It is thus "not an impermissible bill of attainder." *Id.*

## 2. Punishment

Though the pay-for-stay program does not act as a bill of attainder because it affects all persons subject to its terms, I nonetheless note that it does not qualify as "punishment," as that term applies to bills of attainder.

Punishment in the traditional sense is "imprisonment, banishment, . . . punitive confiscation of property by the sovereign," or "a legislative enactment barring designated individuals or groups from participation in specified employments or vocations." *Nixon*, *supra*, 433 U.S. at 474. Whether a sanction constitutes punishment also requires consideration of "whether, in light of the severity of the burdens imposed, the challenged law serve[s] legitimate nonpunitive purposes" and "whether the legislature intended the law to serve as punishment." *Cutshall*, *supra*, 193 F.3d at 477 (citing *Nixon*, *supra*, 433 U.S. at 475-78).

9

The pay-for-stay program is not a "punitive confiscation of property by the sovereign," and, "in light of its severity," $100, "the law serves "legitimate nonpunitive purposes." *Id.* It is uncontested that the pay-for-stay program was adopted to recoup the costs of incarceration, and not as a means of punishment. For these reasons, defendants' motion for summary judgment is granted as to this claim.

### B. Due Process

Plaintiff also seeks summary judgment on his claim that defendants' pay-for-stay program violates the Fourteenth Amendment's prohibition on deprivation of property without due process of law. U.S. Const. amend XIV; *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Plaintiff brings this claim under § 1983.[4] Defendants contend that because they are acting in accordance with the *Koltiska* consent decree, their actions do not violate plaintiff's rights.

Plaintiff argues that the booking fee policy violates due process because it: 1) does not provide adequate notice of the seizure or a pre-deprivation hearing; and 2) places the burden on the inmate to seek a refund. Plaintiff also argues that defendants' pay-for-stay program violates the Fourteenth Amendment because it is inconsistent with state law and imposes punishment prior to conviction.

### 1. Procedural Due Process

To establish a procedural due process claim under § 1983, plaintiff must establish: 1) a protectable life, liberty or property interest; 2) deprivation of such interest; and 3) "the state did not afford . . . adequate procedural rights prior to" the deprivation. *E.g., Hahn v. Star Bank*, 190

---

[4] Plaintiff paid only a booking fee, not per diem fees. For this reason, I here address only his challenges to the booking fee.

F.3d 708, 716 (6th Cir. 1999). "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted). It is not "the deprivation by state action of a constitutionally protected interest" alone that is unconstitutional, but "the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Post-deprivation process may satisfy the procedural due process requirement in some circumstances. *See, e.g.*, *Sickles v. Campbell County*, 501 F.3d 726, 730-31 (6th Cir. 2007).

### a. Property Interest

To determine whether there is a property interest, I look to state law. *Ludwig v. Bd. of Trs.*, 123 F.3d 404, 409 (6th Cir. 1997). There is no dispute that plaintiff had a property interest in his money. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972) ("[P]roperty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.").

### b. Deprivation

Even "a temporary, nonfinal deprivation of property is . . . a deprivation in terms of the Fourteenth Amendment . . . ." *Fuentes v. Shevin*, 407 U.S. 67, 84-85 (1972). Defendants do not contest that they deprived plaintiff of his property when deputies took the $100 booking fee.

The success of plaintiff's motion for summary judgment on the procedural due process claim therefore depends on whether, taking the facts in the light most favorable to defendants, the process given was insufficient.[5]

---

[5] Defendants also seek summary judgment on plaintiff's procedural due process claim, but attempt to apply a legal standard inapplicable to the case at hand. They claim plaintiff had to plead and prove the inadequacy of state remedies.

11

### c. Process

Plaintiff argues that because "no pretrial detainee ever receives a hearing before the seizure of his or her funds, there is no need for further inquiry." [Doc. 14].

When determining the requisite process due, however, courts apply a balancing test, which is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, *supra*, 424 U.S. at 334.

To determine what process is due I must balance: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.*

The Sixth Circuit recently addressed a Kentucky statute authorizing counties to require an individual who is arrested and incarcerated to surrender all property on his person. *Sickles*, *supra*, 501 F.3d at 728. The challenged county policy provided that any cash held by the individual is deposited into the inmate's canteen account for the individual's use to purchase goods while

---

In the Sixth Circuit, a plaintiff may prevail on a procedural due process claim by demonstrating property deprivation by: 1) an established state procedure that itself violates due process rights, or 2) a "random and unauthorized act" causing a loss for which available state remedies would not adequately compensate the plaintiff. *Warren v. City of Athens*, 411 F.3d 697, 709 (6th Cir. 2005). The rule requiring a plaintiff to plead and prove the inadequacy of state remedies is "clearly inapplicable where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized conduct." *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir. 1988).

Defendants' own argument necessarily admits that the procedure is an established one, as their central assertion is that the booking fee program applies to all individuals booked at the Lucas County jail and that Lucas County enacted the current program to comply with *Koltiska* consent decree. Defendants therefore cannot obtain summary judgment on plaintiff's procedural due process claim on the basis that plaintiff has failed to plead the inadequacy of state remedies.

incarcerated. *Id.* Under the policy, a fee is automatically withheld from the canteen account to cover costs such as booking and arraignment, and a per diem fee is collected for each night spent in jail. *Id.* at 729. One plaintiff had cash at the time of his arrest, and the county credited that money, minus the booking fee, to his canteen account. Money orders from relatives were deposited in a second plaintiff's canteen account, from which prison officials deducted per-diem and booking fees. *Id.*

The court in *Sickles* upheld the policy against a procedural due process challenge. Plaintiffs argued the county was required to hold a pre-deprivation hearing. Applying the *Mathews* factors, the court held that: 1) the private interests—$20 and $110.27, respectively, withheld—were "small in absolute and relative terms[;]" 2) "the risk of erroneous deprivation [was] minor" because "[t]he withholding of funds involve[d] elementary accounting that has little risk of error and [was] non-discretionary[;]" 3) "the potential benefits of other safeguards—including a pre-deprivation hearing—[were] few" and "[t]he program contain[ed] other protections" such as the jail's grievance procedures[;]" and 4) "the government's interest—sharing the costs of incarceration and furthering offender accountability—[were] substantial."[6] *Id.* at 730-31.

In this case, plaintiff paid a booking fee at the Lucas County jail on August 25, 2008. Officials placed the booking fee into a trust account and returned it to plaintiff after the Toledo Municipal Court dismissed the charges. Defendants contend that the pay-for-stay program operated in accordance with the terms of the *Koltiska* consent decree.

---

[6] *Cf. Allen v. Leis*, 213 F. Supp. 2d 819, 834 (S.D. Ohio 2002) (holding that county jail's booking fee policy violated procedural due process because the "deprivation of property occurs at the moment the book-in-fee is separated from the remainder of a prisoner's property," and "there is no hearing before this deprivation occurs."). *Allen*, however, involved a certified class where plaintiffs alleged less than three percent of the funds seized were returned, *id.* at 824, and did not, as is alleged here, allow plaintiffs the option of not paying the fee.

### i. Private Interest

The private interest in this case is the $100 booking fee plaintiff paid. The court in *Sickles*, *supra*, found a somewhat similar larger amount, $110.27, to be "small in absolute and relative terms" for purposes of procedural due process. 501 F.3d at 730.

In this part of its analysis, the court in *Sickles* noted:

> The private stakes at issue thus do not begin to approach the kinds of government conduct that have required a predeprivation hearing, such as a limitation on the "historic" "right to maintain control over [one's] home," *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993), or the termination of government benefits, which for many people are "the very means by which to live." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970).

*Id.*

The booking fee in this case, additionally, was placed into a trust account. Under the terms of the consent decree, it could not be used except on conviction. The private interest implicated is therefore minimal.

### ii. Risk of Erroneous Deprivation and Value of Additional Procedures

The risk under the program of an erroneous deprivation is low and additional procedures are unlikely to increase accuracy. As noted above, defendants contend that the pay-for-stay program abides by the terms of the *Koltiksa* consent decree, which provides that at booking, arrestees must be informed of their option not to pay the fee. There is very little risk, therefore, of an erroneous deprivation, because a person can simply choose not to pay the booking fee.

Even if, as plaintiff alleges, no one told him about the option not to pay the booking fee, the risk of erroneous deprivation remains low. As the court in *Sickles* stated, "[t]he withholding of funds involves elementary accounting that has little risk of error . . . ." 501 F.3d at 730; *see also Slade*

*v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253-54 (4th Cir. 2005) ("The daily deduction of the [one dollar per diem] charge from the prisoner's account is a ministerial matter with no discretion and minimal risk of error."); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) ("The [ten dollar per diem] assessments [on convicted prisoners] . . . involve routine matters of accounting, with low risk of error.").

Additional procedures in this case are unlikely to increase accuracy or give greater protection to the plaintiff's property interests. It is unclear exactly what procedure plaintiff contends would be adequate to satisfy due process here. Under the system defendants assert is in place, Lucas County jail officials inform a person being booked of his or her right not to pay the fee. In addition, plaintiff signed a form that provided him information about how to recover the booking fee.

Additional procedures, such as a pre-deprivation hearing, are unlikely to reduce further the risk of an erroneous deprivation.

### iii. Government Interest

The government interest is in recouping costs from inmates. The court in *Sickles* recognized this interest as "substantial," and, in holding that pre-deprivation process was not required, noted:

> The form of property at issue—funds deposited in an inmate's canteen account—justifies the government's interest in promptly collecting fees owed to it. Just as personal property could be removed to another jurisdiction, destroyed, or concealed if advance warning of confiscation were given, so inmates could drain their canteen accounts of funds prior to a hearing, a strategy some . . . inmates previously used to limit the funds available for withholding.

501 F.3d at 731 (internal citation and quotation omitted).

The program enables the County to collect and hold money "up front," which reduces the risk that, if an inmate is convicted, no funds will be available. The government has an

understandable interest in getting its hands on monies when it best can.[7] Once it does, its right to keep that money is conditional. And that is how the program worked for plaintiff.

As demonstrated by the facts of this case, plaintiff got notice of his right to seek a refund of his booking fee. He signed a form stating he was depositing $100 and informing him that "to seek a return of your deposit, it is your responsibility to provide legal verification that all charges have been dismissed or you have been found innocent on all charges." [Doc. 14, at 23]. The form also provided a phone number for the "Pay for Stay Coordinator." Plaintiff's money was refunded.

I thus find that plaintiff has not shown he is entitled to judgment as a matter of law on his procedural due process claim. The post-deprivation process provided satisfies the demands of procedural due process. I therefore deny plaintiff's summary judgment motion on this claim.[8]

---

[7] To the extent plaintiff makes a broader allegation that Lucas County requires inmates to pay pay-for-stay fees for time spent in jail prior to conviction, that situation is not presented by plaintiff's case and I do not address it.

[8] Plaintiff argues, in the course of his due process claim, that the state law does not authorize defendants to collect funds to reimburse them for costs incurred prior to a detainee's conviction. First, plaintiff has not alleged that his money was taken and applied to any pre-conviction confinement.

Second, to the extent that an argument that defendants are violating state law is grounded in the Fourteenth Amendment, it must fail. As the court in *Sickles* stated in response to a similar allegation that the county's actions were not authorized by state law:

> Although the Fourteenth Amendment requires a State to provide a fundamentally fair process "at a meaningful time and in a meaningful manner," *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), it is not violated every time a county violates a state law—particularly a state law that does not purport to define a property interest or a pertinent liberty interest, *see e.g.*, *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992) (Section 1983 "does not provide a remedy for abuses [of state power] that do not violate federal law.").

501 F.3d at 752; *see also Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003) ("Section 1983 . . . authorizes courts to redress violations of rights, privileges, or immunities secured by the Constitution and [federal] laws that occur under color of state law. The

**iv. Punishment**

Plaintiff's summary judgment motion also asserts that the booking fee amounts to punishment without due process. Plaintiff alleges, summarily, that "A Pretrial Detainee, Not Having Been Convicted of Any Crime, May Not Be Punished By The State." [Doc. 14, at 10].[9]

Under the due process clause, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). "[T]he Government concededly may detain [a criminal defendant] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility, so long as those conditions and restrictions do not amount to punishment." *Id.* at 536-37.

In the absence of an express intent to punish, the most significant factors in identifying punishment are "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *U.S. v. Salerno*, 481 U.S. 739, 747 (1987) (quotations omitted).

Although pretrial detainees may not be punished, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martine v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

---

statute is thus limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law.") (internal quotation and citation omitted).

[9] Plaintiff's argument following this heading is largely premised on the contention that defendants' actions violate due process because Lucas County's pay-for-stay program is not authorized by state law. As discussed previously, § 1983 only protects federal and constitutional rights, it "does not cover official conduct that allegedly violates state law." *Neinast*, *supra*, 346 F.3d at 597 (quoting *Huron Valley Hosp.*, *supra,* 887 F.2d at 714)).

While plaintiff is correct that a pretrial detainee may not be punished prior to conviction, he has not shown that the booking fee is punishment. It is uncontested that the purpose of the fee is to recoup costs associated with booking a person into the jail. This is "an alternative purpose to which" the policy "may rationally be connected" and it is not "excessive in relation to" that purpose. *Salerno*, *supra*, 481 U.S. at 747. As the court in *Sickles* recognized, the government interest in recouping the costs of incarceration is "substantial." 501 F.3d at 731. By the terms of the consent decree, this money is held in trust and then returned to the person following dismissal or acquittal, or applied toward the pay-for-stay obligation incurred after conviction.

I therefore conclude that the $100 booking fee, which is held in trust for the inmate, to be applied to costs on conviction, or returned on dismissal, does not amount to unconstitutional punishment without due process.

### 2. Substantive Due Process

It is unclear, but plaintiff may also be alleging a substantive due process violation.

To show a cognizable substantive due process claim, a person must assert either the "denial of a right, privilege, or immunity secured by the Constitution or federal statute other than [a] procedural claim," or an official act which "shocks the conscience." *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993). Conduct that violates substantive due process is "'conduct intended to injure in some way unjustifiable by any government interest.'" *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir.2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). The "shocks the conscience" standard is difficult to satisfy, as noted in Lewis, *supra*, 523 U.S. at 846 (internal citation omitted): "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"

If the government action does not shock the conscience, that action does not violate substantive due process so long as it is rationally related to a legitimate state interest. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1993).

I agree with defendants that plaintiff pleads no facts that rise to the level of a substantive due process violation, that is, "conduct intended to injure in some way unjustifiable by any government interest." *Mitchell*, *supra*, 487 F.3d at 377 (quoting *Lewis*, *supra*, 523 U.S. at 849). Plaintiff has alleged no violation of a right protected by the Constitution and defendants' action in collecting a booking fee does not "shock the conscience." Lucas County's pay-for-stay program is operated in accordance with the terms of the *Koltiska* consent decree and its uncontested justification is recouping costs from inmates. Although, as discussed above, acting in accordance with a consent decree does not necessarily justify any government action, it does help show that defendants are not acting arbitrarily. Recouping costs from inmates is legitimate state interest and the program in place is rationally related to that interest.

Summary judgment is therefore granted to defendants on this claim.[10]

### C. Violation of Ohio Law

Finally, plaintiff alleges that the County conducts its pay-for-stay program in violation of Ohio law.[11] Defendants argue they are entitled to summary judgment on this claim because the

---

[10] Because I have denied plaintiff summary judgment, I find his claims for declaratory and injunctive relief moot. *See Gottfried v. Med. Planning Svcs., Inc.*, 280 F.3d 684, 691 (2002) ("A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.")

[11] Plaintiff seeks summary judgment on only the issue of liability. Plaintiff argues that inconsistencies between defendants' program and Ohio law violate due process, but does not move for summary judgment on his independent claim that the program violates Ohio law.

19

*Koltiska* consent decree was entered after the current Ohio statute was enacted and after a non-binding opinion by the Ohio Attorney General concluded that the Ohio law does not permit a county to charge defendants for expenses incurred prior to a person's conviction. Again, a judicially-approved consent decree is not a conclusive determination on the procedures laid out therein. Defendants' motion for summary judgment on these grounds is therefore denied.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Plaintiff's motion for summary judgment on the issue of liability [Doc. 14] is denied;

2. Defendants' motion for summary judgment [Doc. 21] is granted as to the bill of attainder and substantive due process claims, and denied as to the procedural due process claim

3. A scheduling/status conference is set for February 16, 2010 at 2:30 p.m.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge